IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH HEITING and
ARDYCE HEITING,

                              Plaintiffs,                        OPINION and ORDER

    v.

                                                                     19-cv-224-jdp

UNITED STATES OF AMERICA,

                              Defendant.

---

       Plaintiffs Kenneth and Ardyce Heiting paid income tax on gains from the sale of stock held in their revocable trust. But when the trustee discovered that the stock sale was prohibited by the trust agreement, the trustee repurchased the stock using trust assets. So, in the following year, the Heitings claimed a credit in the amount of the tax they had paid on the unauthorized stock sale under the claim of right doctrine, codified at 26 U.S.C. § 1341. The Internal Revenue Service denied the credit, and the Heitings filed this suit to get a refund of the taxes they paid on the unauthorized sale of stock. The court has jurisdiction under the Federal Tort Claims Act. 28 U.S.C. § 1346(a)(1).

       The government moves to dismiss the Heitings' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. 15. Under § 1341, the Heitings are entitled to a credit only if they were legally obligated to return the proceeds of the prohibited stock sale. But under the facts alleged in the Heitings' complaint, they had no such obligation. The court will grant the government's motion and dismiss this case.

ALLEGATIONS OF FACT

The court draws the following facts from the Heitings' complaint, Dkt. 1, which are accepted as true for the purposes of deciding the government's motion to dismiss. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). The trust agreement, Dkt. 11, is cited in and attached to the complaint and thus part of the complaint under Federal Rule of Civil Procedure 10(c).

The Heitings established the trust in 2004, Dkt. 11, at 9–11, and amended and restated the trust agreement in 2012, *id.* at 2–6. The trust is governed by Wisconsin law. *Id.*, Article VIII. Marshall & Ilsley Trust Company, N.A., of Stevens Point, Wisconsin, was the initial trustee. BMO Harris Bank, N.A. is the successor to Marshall & Ilsley Trust Company and thus the successor trustee. The trust is a revocable living trust, treated as a "grantor" trust under federal tax law. So the Heitings, not the trust, were treated as the owners of its assets for federal income tax purposes. *See* 26 U.S.C. §§ 671–678. As a grantor trust, the trust itself filed no tax returns; the Heitings reported the trust's gains and losses on their own returns.

The trust agreement granted the trustee broad discretion to invest, reinvest, or retain trust assets. Dkt. 11, Article II (selecting investment option C). But the trust agreement prohibited the trustee from doing anything with the stock of two companies: Bank of Montreal Quebec (BMO) and Fidelity National Information Services, Inc. *Id.*, Article IX, Article X. Despite the prohibition, the trustee sold all of the trust's BMO and Fidelity stock in October 2015. The sale resulted in a taxable gain of $5,643,067.50. Proceeds from the sale remained in the trust.

In January 2016, the trustee realized that the sale of BMO and Fidelity stock was prohibited by the trust agreement. The trustee repurchased the stock with the trust's assets. The Heitings revoked the trust in February 2016.

The Heitings timely filed their 2015 tax return by the extended deadline in October 2016. They reported the gain from the sale of BMO and Fidelity stock and paid tax on it. On their 2016 return, they claimed a deduction under 26 U.S.C. § 1341 for the 2015 taxes they had paid on the gain from the stock sale. The IRS audited the Heitings' 2016 return and denied the deduction.

ANALYSIS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the allegations in the complaint. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). The Heitings do not contend that there are any additional facts and evidence yet to be discovered. As both sides recognize, this case turns on the interpretation and application of 26 U.S.C. § 1341 to the Heitings' situation, as set out in their complaint.

The Heitings rely on the "claim of right doctrine," which applies when a taxpayer reports income under a claim of a right to the income but that claim is later contested. The taxpayer reports the income and pays tax when the income is received, but the taxpayer might be entitled to a deduction under the doctrine if and when the taxpayer's claim to the income is defeated. *United States v. Skelly Oil Co.*, 394 U.S. 678, 680 (1969) (*quoting N. Am. Oil Consol. v. Burnet*, 286 U.S. 417, 424 (1932)).

3

A version of the doctrine is now codified in the tax code at 26 U.S.C. § 1341. To succeed, the Heitings must prove three elements, which are stated in the pertinent part of the statute:

>   (a) General rule If—
>
>   (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
>
>   (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
>
>   (3) the amount of such deduction exceeds $3,000 . . . .

§ 1341(a). If these elements are established, the taxpayer is entitled to a deduction in an amount calculated as provided in § 1341(a)(4) and (5). The taxpayer may take that deduction in the current year or claim a credit for payment of the taxes paid in a prior year. 26 U.S.C. § 1341(b). The statute "is designed to put the taxpayer in essentially the same position he would have been in had he never received the returned income." *Dominion Res., Inc. v. United States*, 219 F.3d 359, 363 (4th Cir. 2000).

The parties agree that the Heitings meet elements (1) and (3): the amount is well over the $3,000 threshold, and, in tax year 2015, it appeared to the Heitings that the proceeds of the stock sale were in their revocable trust, over which they had ultimate control and thus unrestricted rights.

The government contends that the Heitings cannot establish element (2) for two reasons. The government's first and main argument is that the Heitings were not actually required to relinquish the proceeds of the stock sale. The government's secondary argument is that § 1341 is merely a procedural vehicle related to the timing of deductions that grants no

4

substantive right. According to the government, the Heitings' complaint does not identify any substantive tax code provision that grants them a deduction. The government's secondary argument is underdeveloped, but the court need not consider it further because the government's main argument is dispositive.

The parties agree that, to be entitled to a deduction under § 1341, the taxpayer must have a legal obligation to return disputed income. *See Kappel v. United States*, 437 F.2d 1222, 1226 (3d Cir. 1971) (Section 1341 "require[s] that a legal obligation exist to restore funds before a deduction is allowable"). According to the government, once the BMO and Fidelity stock was sold, the Heitings had the unrestricted right to do what they wanted with the proceeds, because they had unrestricted rights over the assets in the revocable trust. Indeed, the Heitings revoked the trust in 2016.

The Heitings argue that the trustee was not authorized to sell the stock in the first place, so the trustee had a legal obligation to use the proceeds of the sale to repurchase the stock. The trustee's legal obligation, the argument goes, should be imputed to the Heitings because tax law treats the Heitings, not the trust, as the owner of the trust's assets. Dkt. 20, at 7. Furthermore, according to the Heitings, they could not ignore a breach of the trust agreement and profit from it. The basic principle of the Heitings' argument is that, for IRS purposes, a grantor trust is disregarded and the Heitings and their trust are, essentially, one in the same.

The Heitings are correct that a grantor trust is disregarded for purposes of income tax. But the Heitings' argument is fundamentally unsound as a matter of trust law.

Neither the trustee nor the Heitings were actually obligated to repurchase the BMO and Fidelity shares. Under the Wisconsin Trust Code, "[w]hile a trust is revocable, the trustee may follow a direction of the settlor that is contrary to the terms of the trust." Wis. Stat.

5

§ 701.0808(1). So the Heitings, without amending the trust, could have instructed the trustee to do anything with the proceeds of the stock sale. Under the trust agreement itself, the trustee had to follow the Heitings' directions in taking *any* action regarding BMO and Fidelity stock—not only in selling it, but in buying it back as well. *See* Dkt. 11, Article IX, Article X. And, by the terms of the trust agreement, the Heitings could have amended or revoked the trust at any time, as they did in 2016.

The Heitings also contend that when they learned about the trustee's unauthorized stock sale, they had no choice in how to respond. They say that "a beneficiary of a trust cannot ignore a breach and profit from it simply because the trustee fails to remedy that breach." Dkt. 20, at 9. They cite no authority for this proposition. It's long been the law in Wisconsin that a beneficiary can consent to a trustee's action, thereby ratifying conduct that would otherwise breach the trustee's duty to the trust. *See, e.g.*, *In re Spengler*, 596 N.W.2d 818, 825–26, 228 Wis. 2d 250 (Ct. App. 1999); *see also Koult v. Kaufer*, 159 N.W. 806, 809, 164 Wis. 136 (1916) (if trustee improperly invests trust assets, beneficiary "may retain the property and thereby ratify the wrong"). The trustee's obligations to the Heitings simply cannot be imputed to the Heitings themselves as though the Heitings were somehow irrevocably bound to the terms of their own revocable trust.

The Heitings rely heavily on *First National Bank of Chicago v. United States*, 551 F. Supp. 157 (N.D. Ill. 1982), but the case is not on point. *First National Bank*, like this case, involved a trustee's unauthorized sale of stock that the trustee subsequently repurchased with trust assets. *Id.* at 158. But the sole issue in *First National Bank* was whether the trust was entitled to a deduction in the year that the proceeds were received, or whether the trust had to claim a § 1341 credit in a subsequent year when the stock was repurchased. The court held that the

trust had to claim a credit under § 1341 in the year of the repurchase. *Id.* at 159. That is not the issue here.

Moreover, *First National Bank* differs from this case in two key respects. First, the trust in that case was not a grantor trust; instead, the trust itself was the taxpayer, so the entity obligated to return the restricted income and the taxpayer eligible for a § 1341 credit were one and the same. Second, the stock repurchase in *First National Bank* was court-ordered after one of the beneficiaries sued over the unauthorized stock sale. *Id.* at 158. The Heitings' trustee had no comparable legal obligation, and neither did the Heitings themselves.

The unauthorized sale of the BMO and Fidelity stock may have caused the Heitings to recognize and pay tax on a substantial gain that they would have rather deferred. But § 1341 provides no remedy because they did not have to repurchase the stock. Their recourse, if any, lies against the trustee, not the IRS.


ORDER

IT IS ORDERED that defendant United States of America's motion to dismiss plaintiffs Kenneth Heiting and Ardyce Heiting's complaint, Dkt. 15, is GRANTED. The case is DISMISSED with prejudice for plaintiffs' failure to state a claim upon which relief may be granted.

Entered January 23, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge